23 A.3d 223

**Leroy EVANS, Jr.**

v.

**STATE of Maryland.**

**No. 72, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 30, 2011.

Brian L. Zavin, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Jessica V. Carter, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

In this case, we pen a sequel to *Chen v. State*, 370 Md. 99, 803 A.2d 518 (2002), a case in which we determined that a provision that prohibited an activity and a separate provision that penalized that same activity, though separated during a recodification, could nonetheless be read *in pari materia* as penalizing the act of possessing unstamped cigarettes. We now address whether a statute criminalizing conduct, which does not contain or have a related penalty provision, as a result of substantive revisions by the Legislature, can constitute a crime.

Petitioner, Leroy Evans, Jr., seeks to overturn his conviction on Count Nine of the Indictment against him for the unlawful obliteration, removal, change, or alteration of a manufacturer's identification mark or number on a firearm, pursuant to Section 5–142 of the Public Safety Article, Maryland

Code (2003),[1] asserting that Section 5–142 does not contain a penalty provision and that the penalty provision in Section 5–143(b) of the Public Safety Article does not apply.[2] The Court of Special Appeals affirmed Evans's conviction on Count Nine of the Indictment, and we granted certiorari, *Evans v. State*, 415 Md. 607, 4 A.3d 512 (2010), to answer the following question:

> Did the circuit court err in sentencing Petitioner for obliterating the serial number on a firearm where the Legislature has not provided a penalty for that offense?

We shall hold that the omission of a penalty provision in or related to Section 5–142, which prohibits obliterating, removing, changing, or altering the manufacturer's identification mark or number, renders Section 5–142 incapable of sustaining a criminal conviction, so that Evans's conviction on Count Nine of the Indictment must be reversed.[3]

---

1. Section 5–142 of the Public Safety Article, Maryland Code (2003), generally prohibits obliterating, removing, changing, or altering the manufacturer's identification mark or number on a firearm:

   (a) *Prohibited.*—A person may not obliterate, remove, change, or alter the manufacturer's identification mark or number on a firearm.
   (b) *Presumption.*—If on trial for a violation of this section possession of the firearm by the defendant is established, the defendant is presumed to have obliterated, removed, changed, or altered the manufacturer's identification mark or number on the firearm.
   All references to Section 5–142 of the Public Safety Article ("Section 5–142") throughout are to Maryland Code (2003), unless otherwise noted.

2. Section 5–143 of the Public Safety Article, Maryland Code (2003), provides:

   (a) *Prohibited.*—Except as otherwise provided in this subtitle, a dealer or other person may not knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle.
   (b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.
   (c) *Separate crime.*—Each violation of this section is a separate crime.
   All references to Section 5–143 of the Public Safety Article ("Section 5–143") throughout are to Maryland Code (2003), unless otherwise noted.

3. The State, in a footnote, raised whether Evans preserved the issue of whether he was illegally sentenced for a violation of Section 5–142, because he did not object in the trial court. It is well settled, however,

Evans was indicted and tried before a jury in the Circuit Court for Prince George's County in 2007 on eleven drug and firearm counts, one of which was Count Nine, which charged him as follows: "Leroy Evans, Jr. on or about the 28th day of December, Two Thousand Six, in Prince George's County, Maryland, did obliterate the manufacturer's mark or number on a firearm in violation of § 5–142 of the Public Safety Article." Evans was convicted on Count Nine, and the court sentenced him to a five-year term of incarceration,[4] which was to run consecutive to a different sentence on another count.[5]

---

that "failure to object to an allegedly illegal sentence at the time it was imposed does not preclude a defendant from later raising the issue." *Montgomery v. State*, 405 Md. 67, 75, 950 A.2d 77, 82 (2008), citing *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985).

4. The five-year sentence of the court may have been drawn from the Maryland Sentencing Guidelines Manual (2010), at Appendix A, p. 46. There, the Manual indicates that Section 5–143, which prescribes a maximum term of incarceration of five years, contains the applicable penalty for obliterating, removing, changing, or altering the manufacturer's identification mark or number on a firearm pursuant to Section 5–142.

5. Evans was convicted on a number of counts, to include: Count 1: Possession of cocaine with intent to distribute in violation of Section 5–602 of the Criminal Law Article (20 years with all but 10 years suspended); Count 2: Possession of marijuana with intent to distribute in violation of Section 5–602 of the Criminal Law Article (acquitted); Count 3: Possession of MDMA (ecstacy) with intent to distribute in violation of Section 5–602 of the Criminal Law Article (unable to reach verdict); Count 4: Possession of cocaine in violation of Section 5–601 of the Criminal Law Article (merged with count 1); Count 5: Possession of marijuana in violation of Section 5–601 of the Criminal Law Article (1 year consecutive to Count 1); Count 6: Possession of MDMA (ecstacy) in violation of Section 5–601 of the Criminal Law Article (4 years with all but 2 years suspended and consecutive to Count 1); Count 7: Possession of a firearm in connection with a drug trafficking crime in violation of Section 5–621 of the Criminal Law Article (.22 cal. revolver) (20 years with all but 10 years suspended and consecutive to Count 4); Count 8: Possession of a firearm in connection with a drug trafficking crime in violation of Section 5–621 of the Criminal Law Article (.45 cal. handgun) (20 years with all but 10 years suspended and consecutive to Count 7); Count 9: Obliteration of the manufacturer's mark or number on a firearm in violation of Section 5–142 of the Public Safety Article (5 years consecutive to Count 8); Count 10: Possession of a regulated firearm after conviction of a disqualifying crime in violation of Section 5–133(b)(1) of the Public Safety Article (5 years consecutive

Evans noted an appeal to the Court of Special Appeals and argued that the Circuit Court erred by imposing multiple sentences for possession of a firearm during and in relation to a drug trafficking crime, for imposing multiple sentences for unlawful possession of a firearm and for imposing a sentence for obliterating the serial number on a firearm on Count Nine.[6] The Court of Special Appeals affirmed the trial court's sentences in an unreported opinion, and as to Count Nine, reasoned that "[b]y obliterating the serial number on the handgun, appellant knowingly participated in the illegal possession of a regulated firearm in violation of the subtitle, and he was properly sentenced to imprisonment for a period of five years pursuant to PS § 5–143(b)."

Why we appear to be absorbed by the issue of what to do when a statute internally does not contain a penalty provision is because, generally, criminal statutes must contain language that criminalizes the forbidden act, as well as a provision that penalizes the behavior.[7] This proposition, as hornbook law, is succinctly stated by Wayne R. LaFave in the 2010 edition of one of our oft-quoted tomes:

> [A] crime is made up of two parts, forbidden conduct and a prescribed penalty. The former without the latter is no

to Count 9); Count 11: Possession of a regulated firearm after conviction of a disqualifying crime in violation of Section 5–133(b)(1) of the Public Safety Article (5 years consecutive to Count 10).

6. Evans raised three questions before the Court of Special Appeals, only the third of which is before us:
    1. Did the trial court err in imposing multiple sentences for possession of a firearm during and in relation to a drug trafficking crime?
    2. Did the trial court err in imposing multiple sentences for unlawful possession of a firearm?
    3. Did the trial court err in imposing a sentence for obliterating the serial number on a firearm?

7. An exception to this general rule arises where the Legislature fails to provide a penalty for a common law offense. In such cases, the sentence is left to the "sound discretion of the trial court, subject only to the constitutional prohibition against cruel and unusual punishment." *Street v. State*, 307 Md. 262, 267, 513 A.2d 870, 872–873 (1986).

crime. The modern criminal penalties are: the death penalty, imprisonment with or without hard labor, and the fine. In many cases the section of the statute that describes the forbidden conduct concludes with a statement of the punishment; or perhaps one section sets forth the forbidden conduct and the next section the punishment.

Wayne R. LaFave, Criminal Law § 1.2(d), at 12 (5th ed.2010) (footnotes omitted). See *Gargliano v. State,* 334 Md. 428, 438, 450, 639 A.2d 675, 680, 685 (1994), in which we reversed a trial court's application of a mandatory ten-year penalty for drug offenders that "previously [have] been convicted" of similar offenses to an offender who had been convicted of a drug offense after the conviction of the principal offense. In so doing, we relied on the fundamental principle that "criminal statutes [must] be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable and what the penalty for such conduct might be *before* the criminal conduct is committed." *Id.* at 445, n. 16, 639 A.2d at 683, n. 16.

When a statute, as the instant one, fails to internally contain a penalty provision, its ability to criminalize conduct becomes more complicated. LaFave is of assistance in identifying the spectrum of issues in this regard, including in the first instance, those about which there is "little difficulty" for a court to determine criminality:

Sometimes, however, the statute forbidding the conduct may refer to another statute for the punishment, such as the rather common statute providing that whoever commits embezzlement (defining it) shall be punishable as if he committed larceny, with the larceny statute providing for a certain penalty of fine or imprisonment. Another method sometimes encountered is for the statute, after forbidding certain conduct, to conclude "shall be guilty of a felony" (or "misdemeanor"), without setting forth the penalty; but another catch-all statute provides that one who commits a felony (or a misdemeanor) not otherwise punishable shall be punished in a prescribed way. Similarly, the statute defining certain conduct as criminal may say that this crime is a

felony or misdemeanor of a certain classification; another statute then indicates the permissible punishment for each classification. In all of these cases there is little difficulty in concluding that, since the statutes set forth both forbidden conduct and criminal penalty, the legislature has created a crime.

LaFave, § 1.2(d), at 12–13. For example, in *Chen v. State,* 370 Md. 99, 803 A.2d 518 (2002), we were faced with a penalty provision that, due to a recodification, appeared in a different title of the Tax–General Article than the forbidden conduct it punished, namely the possession of unstamped cigarettes.[8] We determined that the two sections in issue could be read *in para materia* in a plain meaning analysis to warrant application of the penalty provision in what was a separate statutory provision.

█ In the more difficult situation, however, the omission of a penalty provision in or related to a statute cannot support a criminal conviction for its violation:

But sometimes the legislature forbids conduct and then omits (in most cases unintentionally) to provide for a penalty; and there is no catch-all statute of the type mentioned above. In such a situation one who engages in the forbidden conduct is not guilty of a crime.

LaFave, § 1.2(d), at 13.[9] Where the present case falls along the LaFave spectrum is the conundrum. The present case,

---

**8.** Section 12–305(a) of the Tax–General Article, Maryland Code (1988, 1997 Repl.Vol.), provided:

(a) *Possession or sale of unstamped cigarettes.*—Unless otherwise authorized under this title, a person may not possess, sell, or attempt to sell unstamped cigarettes in the State.

Section 13–1014(a) of the Tax–General Article, Maryland Code (1988, 1997 Repl.Vol.), provided:

(a) *In general.*—A person who willfully possesses, sells, or attempts to sell unstamped or improperly stamped cigarettes in the State in violation of Title 12 of this article is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both.

**9.** The supreme courts of various of our sister states have ruled that statutes falling within the third category of the LaFave spectrum cannot

we shall determine, is at the far end of the LaFave spectrum—the absence of a penalty provision renders Section 5-142 incapable of criminalizing the conduct in issue.

To assist in resolving the present issue, we rely on one oft-cited statutory standard of review, which we articulated in *Ray v. State*, 410 Md. 384, 978 A.2d 736 (2009):

In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. Occasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language. In such instances, we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.

If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history,

---

support criminal convictions. *See, e.g., People v. Boyd*, 642 P.2d 1, 3–4 (Colo.1982) (affirming dismissal of indictment charging defendants with act of boating on a body of water in violation of Sheriff's Order, because without a penalty, it did not constitute a crime); *State v. Ching*, 62 Haw. 656, 619 P.2d 93, 94–95 (1980) (reversing conviction for performing business activity within a thirty feet street yard setback, because without a penalty, it did not constitute a crime); *State v. Fair Lawn Service Center*, 20 N.J. 468, 120 A.2d 233, 236 (1956) (reversing conviction for being a disorderly person, because without a penalty, it did not constitute a crime); *Commonwealth v. Cunningham*, 365 Pa. 68, 73 A.2d 705, 706 (1950) (affirming dismissal of charges for exceeding the permissible weight limit as to a specific axle on a tractor trailer, because without an applicable penalty provision, it did not constitute a crime); *Johnston v. State*, 100 Ala. 32, 14 So. 629, 629–630 (1893) (reversing conviction for larceny of a dog, because without a clear penalty, it did not constitute a crime).

case law, statutory purpose, as well as the structure of the statute. When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body, and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*Id.* at 404–405, 978 A.2d at 747–748 (citations omitted) (internal quotation marks omitted).

Section 5–142 of the Public Safety Article provides:

(a) *Prohibited.*—A person may not obliterate, remove, change, or alter the manufacturer's identification mark or number on a firearm.

(b) *Presumption.*—If on trial for a violation of this section possession of the firearm by the defendant is established, the defendant is presumed to have obliterated, removed, changed, or altered the manufacturer's identification mark or number on the firearm.

Section 5–143 of the same Article provides:

(a) *Prohibited.*—Except as otherwise provided in this subtitle, a dealer or other person may not knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle.

(b) *Penalty.*—A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

(c) *Separate crime.*—Each violation of this section is a separate crime.

Clearly, there is no internal penalty provision in Section 5–142. Also, Section 5–143(b), a penalty provision, does not explicitly refer to Section 5–142.

Section 5–142 attempts to criminalize the act of obliteration, removal, change or alteration of a manufacturer's identification mark or number on a firearm, which has been defined as:

(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or

(ii) the frame or receiver of such a weapon.

(2) "Firearm" includes a starter gun.

Maryland Code (2003), Section 5–101(h) of the Public Safety Article. The provisions of Section 5–143(b), however, refer only to a "regulated firearm," which is a particular subset of firearms that excludes, for example, rifles and shotguns, unless specified: [10]

(1) a handgun; [11] or

(2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon:

(i) American Arms Spectre da Semiautomatic carbine;

(ii) AK–47 in all forms;

(iii) Algimec AGM–1 type semi-auto;

(iv) AR 100 type semi-auto;

(v) AR 180 type semi-auto;

(vi) Argentine L.S.R. semi-auto;

(vii) Australian Automatic Arms SAR type semi-auto;

(viii) Auto–Ordnance Thompson M1 and 1927 semi-automatics;

(ix) Barrett light.50 cal. semi-auto;

---

**10.** The purpose statement of the Maryland Gun Violence Act of 1996 provides a lengthy discussion of the law's effect on the sale, purchase, transfer, and possession of regulated firearms. 1996 Md. Laws, Chap. 561 and 562. The Floor Report for House Bill 297, however, stipulates that the Maryland Gun Violence Act of 1996 "does not subject rifles and shotguns to any licensure or regulation by the State of Maryland." Senate Judicial Proceedings Committee Floor Report on HB 297 (1996).

**11.** Section 5–101(n) of the Public Safety Article, Maryland Code (2003), defines a "handgun" as a "firearm with a barrel less than 16 inches in length," which "includes signal, starter, and blank pistols." The predecessor statute, Section 441(n) of Article 27, Maryland Code (1957, 1996 Repl.Vol.), provided the same definition of "handgun."

(x) Beretta AR70 type semi-auto;

(xi) Bushmaster semi-auto rifle;

(xii) Calico models M–100 and M–900;

(xiii) CIS SR 88 type semi-auto;

(xiv) Claridge HI TEC C–9 carbines;

(xv) Colt AR–15, CAR–15, and all imitations except Colt AR–15 Sporter H–BAR rifle;

(xvi) Daewoo MAX 1 and MAX 2, aka AR 100, 110C, K–1, and K–2;

(xvii) Dragunov Chinese made semi-auto;

(xviii) Famas semi-auto (.223 caliber);

(xix) Feather AT–9 semi-auto;

(xx) FN LAR and FN FAL assault rifle;

(xxi) FNC semi-auto type carbine;

(xxii) F.I.E./Franchi LAW 12 and SPAS 12 assault shotgun;

(xxiii) Steyr–AUG–SA semi-auto;

(xxiv) Galil models AR and ARM semi-auto;

(xxv) Heckler and Koch HK–91 A3, HK–93 A2, HK–94 A2 and A3;

(xxvi) Holmes model 88 shotgun;

(xxvii) Avtomat Kalashnikov semiautomatic rifle in any format;

(xxviii) Manchester Arms "Commando" MK–45, MK–9;

(xxix) Mandell TAC–1 semi-auto carbine;

(xxx) Mossberg model 500 Bullpup assault shotgun;

(xxxi) Sterling Mark 6;

(xxxii) P.A.W.S. carbine;

(xxxiii) Ruger mini–14 folding stock model (.223 caliber);

(xxxiv) SIG 550/551 assault rifle (.223 caliber);

(xxxv) SKS with detachable magazine;

(xxxvi) AP–74 Commando type semi-auto;

(xxxvii) Springfield Armory BM–59, SAR–48, G3, SAR–3, M–21 sniper rifle, M1A, excluding the M1 Garand;

(xxxviii) Street sweeper assault type shotgun;

(xxxix) Striker 12 assault shotgun in all formats;

(xl) Unique F11 semi-auto type;

(xli) Daewoo USAS 12 semi-auto shotgun;

(xlii) UZI 9mm carbine or rifle;

(xliii) Valmet M–76 and M–78 semi-auto;

(xliv) Weaver Arms "Nighthawk" semi-auto carbine;  or

(xlv) Wilkinson Arms 9mm semi-auto "Terry".

Maryland Code (2003), Section 5–101(p) of the Public Safety Article.

The nomenclature of firearms and regulated firearms represents a meaningful distinction between Sections 5–142 and 5–143, for, ostensibly Section 5–143 would only penalize the obliteration of a mark or number on a regulated firearm, leaving obliteration of a mark or number on any firearm, other than that regulated, without penalty.  Reconciliation of the two provisions in a plain meaning analysis, then, is difficult. Clearly, the Legislature could have added the term "regulated firearm" to Section 5–142, in addition to "firearm," in order to remedy this inconsistency but it did not, as it specifically did in other statutes.[12]

---

**12.** The Legislature has included regulated firearms as a subset of firearms in a number of contexts.  For example, in the context of prosecutions for assault with a firearm, Section 3–202(a)(2) of the Criminal Law Article, Maryland Code (2002, 2010 Supp.), provides:

(2) A person may not commit an assault with a firearm, including:
(i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 4–201 of this article;
(ii) an assault pistol, as defined in § 4–301 of this article;
(iii) a machine gun, as defined in § 4–401 of this article;  and
(iv) a regulated firearm, as defined in § 5–101 of the Public Safety Article.

For possessing, owning, carrying, or transporting a firearm after certain drug crime convictions, Section 5–622(a) of the Criminal Law Article, Maryland Code (2002, 2010 Supp.), provides:

(a) *"Firearm" defined.*—In this section, "firearm" includes:
(1) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, and short-barreled rifle, as those words are defined in § 4–201 of this article;

The difficulty of reconciling the two sections is further exacerbated by the fact that the acts of "obliterat[ing], remov[ing], chang[ing], or alter[ing] the manufacturer's identification mark or number" in Section 5–142(a) are not synonymous to the acts of "illegal sale, rental, transfer, purchase, possession, or receipt" in Section 5–143(a). The terms "obliterate, change, remove, or alter" are not defined in the "Regulated Firearms" Subtitle, but generally, "obliterate" is "[t]o wipe out, rub off, or erase (a writing or other markings)," "remove" is "to change the location, position, station, or residence of," "change" is "to make different in some particular," and "alter" is "to make different without changing into something else." Black's Law Dictionary 1181 (9th ed. 2009); Merriam–Webster's Collegiate Dictionary 35, 206, 1053 (11th ed. 2005). Conversely, the term "possession," while not defined in the "Regulated Firearms" Subtitle, generally denotes "[t]he fact of having or holding property in one's power." Black's Law Dictionary 1281 (9th ed. 2009). Thus, even the criminalizing conduct language in the two statutes is dissimilar.

The State avers that the term "possession" in Section 5–143(a) includes the presumptive possession language of Section 5–142(b), that is, if "possession of the firearm by the defendant is established, the defendant is presumed to have obliterated, removed, changed, or altered the manufacturer's identification mark or number on the firearm," so that Evans is guilty of possessing a firearm with an obliterated identifica-

---

    (2) a machine gun, as defined in § 4–401 of this article; and
    (3) a regulated firearm, as defined in § 5–101 of the Public Safety Article.
Section 6–201(g)(1) of the Criminal Law Article, Maryland (2002, 2010 Supp.), related to breaking and entering with the intent to steal a firearm, provides:
    (g) *Firearm.*—(1) "Firearm" includes:
        (i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, and short-barreled rifle, as those terms are defined in § 4–201 of this article;
        (ii) a machine gun, as defined in § 4–401 of this article; and
        (iii) a regulated firearm, as defined in § 5–101 of the Public Safety Article.

tion mark or number. Evans, however, was convicted of obliterating the manufacturer's identification mark or number on a firearm in Count Nine, not of possession. The presumption of possession is an evidentiary one, and thus, Section 5-142(b) does not place the act of obliterating the manufacturer's identification mark or number on a firearm in Section 5-142 and illegal possession of a regulated firearm in Section 5-143(a) on the "same footing." *Keller v. State,* 11 Md. 525, 536 (1857). The State's reliance on *Keller* is therefore misplaced.

The State, unavailingly, also supports reconciling the plain language of the two statutes by emphasizing that Section 5-143 must be the penalty for the Section 5-142 conduct, because of the inclusion in Section 5-143(a) of the language "except as otherwise provided." The penalty provision of Section 5-143(b), however, does not contain the same language and, in fact, is limited to language of "this section."

In the absence of a favorable response to its plain meaning argument, the State points us to the legislative histories of Sections 5-142 and 5-143 and asserts a favorable conciliation of the two statutes. The legislative record, however, does not support the State's position.

In 1941, the General Assembly enacted a "Pistols" Subtitle to the Maryland Code with a purpose of regulating the "sale, identification marks and possession of pistols." 1941 Maryland Laws, Chapter 622. One section of the Subtitle forbade "anyone to obliterate, remove, change or alter the manufacturer's identification mark or number on any firearms," without a correlative firearms definition, to wit:

It shall be unlawful for anyone to obliterate, remove, change, or alter the manufacturer's identification mark or number on any firearms. Whenever on trial for a violation of this section the defendant is shown to have or have had possession of any such firearms, such fact shall be presumptive evidence that the defendant obliterated, removed, changed or altered the manufacturer's identification mark or number.

1941 Maryland Laws, Chapter 622, Section 531C. Importantly, the language is almost identical to that of Section 5-142, with

the exception of the substitution of the phrase "a firearm" for "any firearms."

Its penalty provision was also enacted in 1941 at the end of a series of four prohibited acts, which included the obliteration, removal, change or alteration of a manufacturer's identification mark or number on a firearm and read:

Any person violating any of the provisions of this sub-title shall upon conviction thereof be fined not more than Three Hundred Dollars ($300) or imprisonment for not more than one (1) year, or both.

1941 Maryland Laws, Chapter 622, Section 531G. The other prohibited acts in the list included proscriptions on selling or transferring a pistol or revolver to persons convicted of a crime of violence or who were fugitives from justice, possessing a pistol or revolver if a person had been convicted of a crime of violence or who were fugitives from justice, and possessing, selling, transferring, or disposing of a stolen pistol or revolver. 1941 Maryland Laws, Chapter 622, Sections 531D and 531 E, respectively. The latter two sections explicitly dealt with a "pistol or revolver," a term which was defined as "any firearm with barrel less than twelve inches in length." 1941 Maryland Laws, Chapter 622, Section 531A.[13]

In 1966, the Legislature substantially affected the "Pistols" Subtitle, although the provision related to obliterating the

---

**13.** The "Pistols" Subtitle underwent several changes after it was enacted in 1941. In 1943, the Legislature added a new section, which displaced every section in the "Pistols" Subtitle to the next letter in the alphabet, Chapter 155 of the Maryland Laws of 1943, and was codified as Sections 531B through 531H of Article 27, Maryland Code (1939, 1943 Supp.). The prohibition on obliterating the manufacturer's identification mark on a firearm became Section 531D, the prohibition on selling a pistol or revolver to a person convicted of a crime of violence or possessing a pistol or revolver by a person convicted of a crime of violence became Section 531E, and the prohibition on possessing a stolen pistol or revolver became Section 531F. The penalty provision became Section 531H.

In 1951, the "Pistols" Subtitle was renumbered without substantive change, Chapter 315 of the Maryland Laws of 1951, and was codified as Sections 538 through 544 of Article 27, Maryland Code (1951). The prohibition on obliterating the manufacturer's identification mark on a

manufacturer's identification mark on a firearm remained the same in number, Section 444 of Article 27, and in substance. Regarding the other prohibitions, the Legislature expanded the classes of individuals who could not receive or possess pistols or revolvers. The catch-all penalty provision was also altered to increase the maximum penalty, and a new provision was added to the section for making false statements in an application to purchase a pistol or revolver, to read:

> Any person violating any of the provisions of this subtitle unless otherwise stated herein shall upon conviction be fined not more than one thousand dollars ($1,000) or imprisoned for not more than three years, or both. Any prospective purchaser making a false material statement on an application to purchase or transfer required by section 442 or any dealer making a false material statement on an application for a pistol and revolver dealer's license required by section 443 shall upon conviction thereof be fined not more than one thousand dollars ($1,000) or imprisoned for not more than two (2) years, or both.

1966 Maryland Laws, Chapter 502, Section 448, codified as the same section in Article 27, Maryland Code (1957, 1966 Supp.).[14]

---

firearm became Section 540, the prohibition on selling a pistol or revolver to a person convicted of a crime of violence or possessing a pistol or revolver by a person convicted of a crime of violence became Section 541, and the prohibition on possessing a stolen pistol or revolver became Section 542. The penalty provision became Section 544.

In 1957, the "Pistols" Subtitle was again renumbered, without substantive change, Chapter 23 of the Maryland Laws of 1957, and became codified as Sections 441 through 448 of Article 27, Maryland Code (1957). The prohibition on obliterating the manufacturer's identification mark on a firearm became Section 444, the prohibition on selling a pistol or revolver to a person convicted of a crime of violence or possessing a pistol or revolver by a person convicted of a crime of violence became Section 445, and the prohibition on possessing a stolen pistol or revolver became Section 446. The penalty provision became Section 448.

14. In 1966, the Legislature repealed and reenacted Section 445 with amendments to expand the class of individuals who could not receive or

The Maryland Gun Violence Act of 1996 changed the landscape of firearms provisions. The "Pistols" Subtitle was renamed "Regulated Firearms." 1996 Maryland Laws, Chapters 561 and 562. The prohibition on obliterating the manufacturer's identification mark or number on a firearm remained unchanged, however. In the other three prohibitory provisions originally associated with obliteration, the Legislature replaced the terms "pistol or revolver" with "regulated firearm." 1996 Maryland Laws, Chapters 561 and 562, Sections 445 and 446, codified as the same sections in Article 27, Maryland Code (1957, 1996 Repl.Vol.).[15] The

---

possess pistols or revolvers. 1966 Md. Laws, Chap. 502, Section 445, codified as the same section in Art. 27, Md.Code (1957, 1966 Supp.). The Legislature repeated this process several times over the next thirty years. *See* 1975 Md. Laws, Chap. 708, Section 445 (minors); 1988 Md. Laws, Chap. 690, Section 445 (persons suffering from mental disorders); 1989 Md. Laws, Chap. 428, Section 445 (persons convicted of drug crimes).

In 1989, the Legislature repealed and reenacted Section 448 with amendments to stiffen the penalty for violating the "Pistols" Subtitle in the catch-all penalty provision and to eliminate the separate penalty for making false statements:

> Any person violating any of the provisions of this subtitle unless otherwise stated herein is guilty of a misdemeanor and shall upon conviction be fined not more than $5,000 or imprisoned for not more than three years, or both.

1989 Md. Laws, Chap. 428, Section 448, codified as the same section in Art. 27, Md.Code (1957, 1987 Repl.Vol., 1989 Supp.).

**15.** Section 445 of Chapter 562 of the Maryland Laws of 1996, codified as the same section in Article 27, Maryland Code (1957, 1996 Repl. Vol.), provided in pertinent part:

> (b) A dealer or person may not sell, rent, or transfer a regulated firearm to any person whom he knows or has reasonable cause to believe:
> (1) Has been convicted of:
> (i) A crime of violence;

> \*     \*     \*

> (2) Is:
> (i) A fugitive from justice;

> \*     \*     \*

> (d) A person may not possess a regulated firearm if the person:
> (1) Has been convicted of:

Legislature also differentiated "regulated firearm" from "firearm," as those definitions exist today.[16] The former catch-all penalty provision, enacted in 1941, which later had been amended to increase its penalty, was repealed. 1996 Maryland Laws, Chapter 562, Section 448. A new penalty provision, Section 449, was enacted:

(a) Any person who violates any of the provisions of § 445(c) of this subheading is guilty of a misdemeanor and upon conviction shall be fined not more than $1,000 or imprisoned for not more than 1 year or both.

(b) Any person who knowingly gives any false information or makes any material misstatement in an application to purchase a regulated firearm or an application for a regulated firearms dealers license shall be guilty of a misdemeanor and upon conviction be fined not more than $5,000 or imprisoned for not more than 3 years, or both.

(c) Any person who violates any of the provisions of § 442A of this subheading is guilty of a misdemeanor and shall upon conviction be fined not more than $5,000 or imprisoned for not more than 3 years or both.

---

(i) A crime of violence;

\*   \*   \*

(2) Is:
(i) A fugitive from justice. . . .
Section 446 of Chapter 562 of the Maryland Laws of 1996, codified as the same section in Article 27, Maryland Code (1957, 1996 Repl.Vol.), provided:
It shall be unlawful for any person to possess, sell, transfer or otherwise dispose of any stolen regulated firearm, knowing or having reasonable cause to believe same to have been stolen.

**16.** Section 441(i) of Chapter 562 of the Maryland Laws of 1996, codified as the same section in Article 27, Maryland Code (1957, 1996 Repl.Vol.), defined "firearm" as "[a]ny weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or "[t]he frame or receiver of any such weapon." Section 441(r) of Chapter 562 of the Maryland Laws of 1996, codified as the same section in Article 27, Maryland Code (1957, 1996 Repl.Vol.), defined "regulated firearm" as "any handgun as defined in this section" or "any assault weapon as defined in this section."

(d) Any person or dealer who is a knowing participant in a straw purchase of a regulated firearm to a prohibited person or to a minor, or transports regulated firearms into this State for the purpose of illegal sale or trafficking of a regulated firearm shall be guilty of a misdemeanor and upon conviction be fined not more than $25,000 or imprisoned for not more than 10 years, or both. Each violation shall be considered a separate offense.

(e) Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both. Each violation shall be considered a separate offense.

1996 Maryland Laws, Chapters 561 and 562, Section 449, codified as the same section in Article 27, Maryland Code (1957, 1996 Repl.Vol.). Section 449(e) is of particular importance because its language is substantially similar to the language of Section 5–143. The Floor Report for Senate Bill 215 explained that Section 449 of Article 27 "add[ed] five penalty provisions." Senate Judicial Proceedings Committee Floor Report on SB 215, at 13 (1996). The Bill Analysis for House Bill 297 captioned Section 449 of Article 27 as "[p]enalties for violations."[17] Judiciary Committee Bill Analysis on HB 297 (1996).

In 2003, the "Regulated Firearms" Subheading was repealed and reenacted as the "Regulated Firearms" Subtitle in the Public Safety Article. 2003 Maryland Laws, Chapter 5.

---

17. In 2000, a sixth penalty provision was added to Section 449 of Article 27, which prescribed a mandatory five-year minimum term of incarceration for persons convicted of illegal possession of a regulated firearm, if they had formerly been convicted of a crime of violence. 2000 Md. Laws, Chap. 2, Section 449(e), codified as Section 449(e) of Art. 27, Md.Code (1957, 1996 Repl.Vol., 2000 Supp.). This addition displaced the former Section 449(e), predecessor to Section 5–143, to Section 449(f) of Article 27.

The prohibited act of obliterating the manufacturer's identification mark or number on a firearm was renumbered as Section 5–142, and the language was changed from "any firearms" to "a firearm":

(a) Prohibited. A person may not obliterate, remove, change, or alter the manufacturer's identification mark or number on a firearm.

(b) Presumption. If on trial for a violation of this section possession of the firearm by the defendant is established, the defendant is presumed to have obliterated, removed, changed, or altered the manufacturer's identification mark or number on the firearm.

2003 Maryland Laws, Chapter 5, Section 5–142, codified as the same section in the Public Safety Article, Maryland Code (2003). At this point, Section 5–142 became an "orphan," separated from its siblings. The other three prohibited acts that had first appeared in the former "Pistols" Subtitle, which were later expanded, were repealed and reenacted in Chapter 5 of the 2003 Laws of Maryland.[18] The former penalty section, Section 449 of Article 27, was broken up into its respective parts, and each subsection was matched with specif-

---

18. Section 5–134(b) of Chapter 5 of the Maryland Laws of 2003, which was codified as the same section in the Public Safety Article, Maryland Code (2003), provided, in pertinent part:

(b) Sale, rental or transfer of regulated firearm prohibited. A dealer or other person may not sell, rent, or transfer a regulated firearm to a purchaser, lessee, or transferee who the dealer or other person knows or has reasonable cause to believe:

\* \* \*

(2) has been convicted of a disqualifying crime....

Section 5–133(b) of Chapter 5 of the Maryland Laws of 2003, which was codified as the same section in the Public Safety Article, Maryland Code (2003), provided, in pertinent part:

(b) Possession of a regulated firearm prohibited. A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime....

Section 5–138 of Chapter 5 of the Maryland Laws of 2003, which was codified as the same section in the Public Safety Article, Maryland Code (2003), provided:

A person may not possess, sell, transfer, or otherwise dispose of a stolen regulated firearm if the person knows or has reasonable cause to believe that the regulated firearm has been stolen.

ic prohibited acts throughout the Subtitle except for Section 449(f), which became Section 5–143 of Chapter 5 of the 2003 Maryland Laws, codified as the same section in the Public Safety Article, Maryland Code (2003), to wit: [19]

(a) Prohibited. Except as otherwise provided in this subtitle, a dealer or other person may not knowingly participate in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subtitle.

(b) Penalty. A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both.

(c) Separate crime. Each violation of this section is a separate crime.

Albeit tortuous, the legislative history of Sections 5–142 and 5–143 supports the conclusion that the act of obliterating, removing, changing or altering the manufacturer's identification mark or number became inadvertently orphaned from a penalty provision in part because of its inclusion of the term "firearm," rather than "pistol or revolver." Unlike the other three prohibited acts enacted in 1941, which were ultimately

---

19. Former Section 449(a) of Article 27, which penalized the sale, rental, or transfer of firearms, firearm ammunition, or deadly weapons to a minor pursuant to former Section 445(c), was repealed and reenacted along with its prohibited conduct as Section 5–134(d) of Chapter 5 of the 2003 Maryland Laws. Former Section 449(b) of Article 27, which penalized the giving of false information in an application to purchase a regulated firearm, was repealed and reenacted associated with its criminalizing content as Section 5–139 of Chapter 5 of the 2003 Maryland Laws. Former Section 449(c) of Article 27, which penalized the purchasing of more than one regulated firearm within a 30–day period pursuant to Section 442A, was repealed and reenacted within its criminalizing content as Section 5–128 of Chapter 5 of the 2003 Maryland Laws. Former Section 449(d) of Article 27, which penalized the straw purchase of a regulated firearm to a prohibited person, was repealed and reenacted within its criminalizing content as Section 5–141 of Chapter 5 of the 2003 Maryland Laws. Former Section 449(e) of Article 27, which penalized the possession of a regulated firearm by a person convicted of a crime of violence or certain drug crimes, was repealed and reenacted within its criminalizing content as Section 5–133(c) of Chapter 5 of the 2003 Maryland Laws.

amended from "pistol or revolver" to the terms "regulated firearm," the prohibited act of obliterating the manufacturer's identification mark or number on a firearm did not enjoy the same attention and did not evolve with the rest of the former "Pistols" Subtitle.

■ To forestall this lineage breakdown, the State has asserted that, considering the purpose of the 1996 Act, to address firearms violence, it is absurd to conclude that the Legislature intended to repeal the crime of obliterating, removing, changing, or altering the manufacturer's identification mark or number on a firearm. Absurdity aside, it is clear that an oversight led to the failure to provide a penalty provision in or related to Section 5–142 and that we now cannot add the language. As we emphasized in *Graves v. State*, 364 Md. 329, 772 A.2d 1225 (2001), we cannot "correct[ ] an omission in the language of a statute even though it appear[s] to be the obvious result of inadvertence." *Id.* at 351, 772 A.2d at 1238 (internal quotation marks omitted).

■ Because Section 5–142 contains no penalty provision, and has no related penalty, obliterating, removing, changing or altering the manufacturer's identification mark or number on a firearm is not a crime. Where an individual is convicted pursuant to a charge that does not constitute a crime, that conviction must be reversed and the sentence vacated. *See Bruce v. State*, 317 Md. 642, 646–649, 566 A.2d 103, 105–106 (1989) (reversing conviction for attempted felony murder, because it was not a crime in Maryland).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO COUNT NINE AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AS TO COUNT NINE AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.**